# Exhibit A

FILED: NEW YORK COUNTY CLERK 07/24/2013

NYSCEF DOC. NO. 1

INDEX NO. 156722/2013

RECEIVED NYSCEF: 07/24/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK STATE ASSOCIATION FOR AFFORDABLE
HOUSING, STERLING FLOOR DESIGNS, LTD.,
BROOKLYN WEST SUPPLY CORP., SMEDCO INC.,
DEUTSCHER & DAUGHTER, INC., LIS CONSTRUCTION
INC., PPEE CONSTRUCTION, INC., ANR
CONSTRUCTION & MGMT CORP., and MASTERCRAFT
MULTICOLOR INC.

Index No.

Date filed:

**SUMMONS**

                                        Plaintiffs,

Plaintiffs designate New
York County as the place for
trial.

- against -

Venue is based on CPLR §§
504 and 505.

COUNCIL OF THE CITY OF NEW YORK, CITY OF NEW
YORK, and NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO THE DEFENDANTS NAMED BELOW:

You are hereby summoned to answer the complaint in this action and to serve a copy of

your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on plaintiff's attorneys within twenty (20) days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

complaint.

Dated: New York, New York
          July 24, 2013

HERRICK, FEINSTEIN LLP

By: _____
          Scott E. Mollen
          Darlene Fairman
2 Park Avenue
New York, New York 10016
(212) 592-1400
Attorneys for Plaintiff

Defendants' Addresses:

Council of the City of New York
City Hall
New York, New York  10007

The City of New York
Corporation Counsel
100 Church Street
New York, New York  10007

New York City Department of Housing
    Preservation and Development
100 Gold Street
New York, New York  10038

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK STATE ASSOCIATION FOR AFFORDABLE      :
HOUSING, STERLING FLOOR DESIGNS, LTD.,          : Index No.
BROOKLYN WEST SUPPLY CORP., SMEDCO INC.,        :
DEUTSCHER & DAUGHTER, INC., LIS CONSTRUCTION    :
INC., PPEE CONSTRUCTION, INC., ANR CONSTRUCTION : **COMPLAINT**
& MGMT CORP., and MASTERCRAFT MULTICOLOR INC. :
                                                :
                      Plaintiffs,               :
                                                :
               - against -                      :
                                                :
COUNCIL OF THE CITY OF NEW YORK, CITY OF NEW    :
YORK, and NEW YORK CITY DEPARTMENT OF           :
HOUSING PRESERVATION AND DEVELOPMENT,           :
                                                :
                      Defendants.               :
                                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiffs, the New York State Association for Affordable Housing ("NYSAFAH"), Sterling Floor Designs, Ltd. ("Sterling"), Brooklyn West Supply Corp. ("BWS"), Smedco Inc. ("Smedco"), Deutscher & Daughter, Inc.("Deutscher"), LIS Construction Inc. ("LIS"), PPEE Construction, Inc. ("PPEE"), ANR Construction & MGMT Corp. ("ANR"), and Mastercraft Multicolor Inc. ("Mastercraft"), by their attorneys, Herrick, Feinstein LLP, for their Complaint against the defendants, alleges as follows:

## INTRODUCTION

      1.    With a mayoral election looming, and no incumbent running, political hopefuls are pandering to their bases, hoping to garner contributions and votes. In this election cycle, New York City's government is populated not only with those members who wish to be re-

elected, but with several who have made their interest in Gracie Mansion clear.  Crain's New York Business reported that all Democratic candidates in the current mayoral race agree with the building trades that "all affordable housing built with city help should be constructed with union labor."  That same article noted that non-union builders, subcontractors, and workers got their start in affordable housing, which unions traditionally didn't care for, but are now increasing their percentage of commercial -- traditionally union -- work.  "A competitive Democratic primary, with every candidate seeking every possible union endorsement, has given the trades their best opportunity to reverse that this trend."  Greg David, *An issue for the next mayor: the building-cost gap*, Crain's N.Y. Bus., May 26, 2013.  One editorial labeled this an effort "by some underemployed unions to bully their way into low-rise affordable-housing work.  *Editorial: A house of cards, this idea*, Crain's N.Y. Bus., June 14, 2013.

2.      It is in this playing field that the City Council passed a plainly unconstitutional law to pander to construction trade unions -- which collectively provide large numbers of contributions and votes -- at the expense of the many small and women and minority owned businesses that compete with big union shops for affordable housing development and construction contracts on projects funded by New York City housing agencies.  The City Council passed this so-called transparency law, commonly referred to as Intro 730A, on July 25, 2012.  Mayor Bloomberg disapproved Intro 730A on August 24, 2012, and the City Council overrode that veto on September 24, 2012.  The new law, designated as Local Law No. 44 ("Local Law 44") for the year 2012 was to take effect on January 1, 2013, but regulations for its implementation have yet to be promulgated.

3.      While the purported purpose of Local Law 44 is to require transparency in affordable housing construction projects, supposedly in response to poor construction quality and

the corruption of City housing officials, what it really does is punish small construction businesses that do not use union labor.

4.    Put simply, Local Law 44 requires that any developer who works on affordable housing projects in the City submit quarterly wage reports for every employee of every contractor and subcontractor and vendor working on any affordable housing project that receives virtually any type of assistance from the New York City Department of Housing Preservation and Development ("HPD").  Any contractor or subcontractor who does not provide the required wage reporting information will be placed on a publically available list of entities ineligible to work on HPD projects.  Local Law 44 requires employers to report on all of the wage information for an employee working on an affordable housing project, whether those particular employees actually work solely on affordable housing projects or on private projects as well. The wage information reported to HPD will necessarily be available to the public through the Freedom of Information Law.  Only employers whose gross annual revenue for the preceding year was less than $2.5 million are exempt from the wage reporting requirement.  Contractors and subcontractors who miss a quarterly report are disqualified from working on affordable housing projects.

5.    In addition, Local Law 44 requires HPD to publish a public database of all complaints made against developers, contractors, and subcontractors regarding the construction quality of a housing project during construction or within five years of construction, however unfounded the complaint may be.

6.    The cost of providing the wage reporting information will force small businesses (many of which are women and minority owned businesses) to stop competing for affordable housing contracts because they cannot afford the additional administrative costs of providing this

HF 8302717v.3

type of information.   Many of these smaller businesses depend on affordable housing work and may not be able to survive.  Moreover, these same small business that generally do not have the money to fend off baseless complaints will suffer from the unvetted public complaint database required by Local Law 44.

7.     Upon information and belief, Local Law 44 will also increase costs for defendant the New York City Department of Housing Preservation And Development ("HPD").  HPD is charged with collecting the data, updating the data, storing the data, and making the data publicly available, all of which will require time and money.  Upon information and belief, HPD has estimated the capital cost to implement Local Law 44 to be $3.5 million, with an additional $325,000 annual operational cost.

8.     This action is brought to challenge the constitutionality of Local Law 44 insofar as it is wholly preempted by Article 19 of the New York State Labor Law and the Municipal Home Rule Law.  Local Law 44 is also preempted by the New York Private Finance Housing Law and the General Municipal Law.  Local Law 44 is hopelessly vague and unworkable, and it will fail to achieve its purported objective.   As such, it violates the Due Process clause of the Constitution.  Finally, Local Law 44 unlawfully discriminates between individuals, existing entities, and new entities, and therefore violates the Equal Protection Clause of the Constitution.

**THE PLAINTIFFS**

9.     At all relevant times, plaintiff NYSAFAH was and is the trade association for New York's affordable housing industry statewide. Its 300 members include for-profit and nonprofit developers, lenders, investors, syndicators, attorneys, architects and others active in the financing, construction, and operation of affordable housing. Together, NYSAFAH's members are responsible for virtually all of the housing built in New York State with federal, state, or

4

local subsidies. In addition to a full slate of networking events, NYSAFAH advocates for policies, legislation and appropriations at the local, state, and federal level that promote the interests of the affordable housing industry. NYSAFAH has offices in Manhattan and Albany, New York.

10.    NYSAFAH serves its members by:

(i) spearheading the creation of new state programs to provide resources to support affordable housing in New York, including the Homes for Working Families Program, the New York State Low Income Housing Tax Credit, the Property Tax Assessment Reform Act, and the Rural and Urban Community Investment Fund;

(ii) working with the state's housing agency, N.Y.S. Homes & Community Renewal, to ensure efficient use of existing resources, streamline the development process, ensure the responsible use of limited public subsidy, and identify opportunities to leverage private investment to maximize affordable housing production and preservation;

(iii) lobbying in Washington, D.C. with a focus on protecting the Low Income Housing Tax Credit, the largest, most successful affordable housing program in the nation, by educating New York's delegation on the importance of affordable housing to their constituents;

(iv) commissioning impactful policy reports, including a 2012 HR&A Advisors study on *The Economic Impacts of Affordable Housing on New York State's Economy,* which quantifies the private investment, job growth, and economic development generated by New York's affordable housing industry each year, and a 2012 Columbia University report on New York State's prevailing wage methodology;

(v) strengthening the range of professionals active in the affordable housing industry by increasing participation of minority and women owned businesses (MWBEs), providing networking opportunities for MWBEs with established industry professionals, and identifying burdensome policy barriers to MWBE participation in affordable housing;

(vi) incubating the development of a new nonprofit organization that trains community-based construction workers in the neighborhoods where affordable housing is built;

(vii) supporting an active younger professionals group aimed at supporting the next generation of affordable housing industry leaders;

(viii) offering a full slate of networking and educational events and running its annual New York State Affordable Housing Conference, with over 1,400 public and private professionals attending.

11.    In New York City, NYSAFAH works with various city agencies to ensure effective programs and efficient regulation. Its Department of Buildings Committee meets quarterly with the City's Department of Buildings to identify and resolve processes and policies hindering efficient development. NYSAFAH staff and its New York City Policy Committee review all housing related legislation, and provide the practical perspective of affordable housing practitioners to government and public officials on the impact of proposed policies. NYSAFAH also develops proactive policy agendas, most recently issuing a comprehensive New York City housing platform for the city's next mayoral administration, which identifies strategies for using affordable housing investment to catalyze renewal of underserved communities.

12.    At least 80 of NYSAFAH'S members are developers, contractors, or subcontractors who work on affordable housing projects within the City of New York, and will be required to comply with Local Law 44's reporting requirements or will be prohibited from working on affordable housing projects.  Those members will also be subjected to the public posting of unvetted complaints under Local Law 44.

13.    At all relevant times, plaintiff Sterling Floor Designs, Ltd. was and is a New York corporation with its primary place of business in Commack, New York.  Sterling supplies and installs flooring, has 40 employees, and is a certified woman owned business in New York State, with a pending application in New York City.  In 2012 Sterling's gross revenue was approximately $9.8 million.  Of that amount approximately thirty percent was in connection with affordable housing development projects.

6

14.     At all relevant times, plaintiff Brooklyn West Supply Corp. was a New York corporation with its primary place of business in Brooklyn, New York.   BWS sells and distributes kitchen cabinets, has twenty employees, and is a certified minority owned business in both New York City and New York State.  In 2012 BWS's gross revenue was approximately $5.2 million.  Of that amount, 10-15% was in connection with affordable housing development projects.

15.     At all relevant times, plaintiff Smedco Inc. was and is a New York corporation with its primary place of business in Jamaica, New York.   Smedco is a plumbing, sprinkler and heating contractor, employs between seven and 25 people, and has applications pending to be a certified minority owned business in New York City and New York State. In 2012 BWS's gross revenue was approximately $2.1 million.  Of that amount, approximately 15% was in connection with affordable housing development projects.

16.     At all relevant times, plaintiff Deutscher & Daughter, Inc. was and is a New York corporation with its primary place of business in Jamaica, New York.   Deutscher is a door, frame and hardware supplier, employs fifteen people, and is a certified woman owned business in both New York City and New York State.  In 2012 Deutscher's gross revenue was approximately $5.25 million.  Of that amount, approximately 40% was in connection with affordable housing development projects.

17.     At all relevant times, plaintiff LIS Construction Inc. was and is a New York corporation with its primary place of business in Monsey, New York.  LIS is a general masonry business, employs six people, and is a certified minority owned business in both New York City and New York State.  In 2012 LIS's gross revenue was approximately $650,000.  Over the last

7

three years, an average of approximately sixty % was in connection with affordable housing development projects.

18.     At all relevant times, plaintiff PPEE Construction, Inc. was and is a New York corporation with its primary place of business in Brooklyn, New York.  PPEE is a sheetrocking, painting and carpentry business, and has applications pending to be a certified minority owned business in New York City and New York State.  In 2012 PPEE's gross revenue was approximately $450,000.  Of that amount, approximately 40% was in connection with affordable housing development projects.

19.     At all relevant times, plaintiff ANR Construction & MGMT Corp. was and is a New York corporation with its primary place of business in Huntington Station, New York. ANR is a general masonry, carpentry, drywall, painting and floorings business, and employs five to fifteen people.  In 2012 ANR's gross revenue was approximately $733,000.  Of that amount, approximately 50% was in connection with affordable housing development projects.

20.     At all relevant times, plaintiff Mastercraft Multicolor Inc. was and is a New York corporation with its primary place of business in Brooklyn, New York.  Mastercraft is a painting contractor, employs about 10 people, and is a certified minority owned business in both New York City and New York State.  Mastercraft's gross revenue for 2012 is projected to be approximately $700,000.  Of that amount, approximately 60% is in connection with affordable housing development projects.

### THE DEFENDANTS

21.     At all relevant times, defendant Council of the City of New York (the "City Council") was and is a governing body for The City of New York, with offices located at City Hall, New York, New York.

HF 8302717v.3

22.     At all relevant times, defendant The City of New York (the "City") was and is a municipal corporation organized and existing under the laws of the State of New York, with offices located at 100 Church Street, New York, New York.

23.     At all relevant times, defendant HPD was and is an agency established under the laws of the State of New York and the New York City Charter, with offices located at 100 Gold Street, New York, New York.

### JURISDICTION AND VENUE

24.     This Court has jurisdiction over Defendants pursuant to New York CPLR § 301.

25.     Venue is proper in this Court pursuant to New York CPLR § 504.

### PROVISIONS OF LOCAL LAW 44

26.     Local Law 44 purports to be a law designed to "increase government transparency by expanding the reporting requirements for residential construction projects that the Department of Housing Preservation and Development initiates, funds, or otherwise participates in." Ostensibly, the impetus for this new law was threefold:

> (i) concern about the quality of construction work being done on affordable housing projects;
>
> (ii) concern about workers not being paid in accordance with applicable laws; and
>
> (iii) concern about recent revelations of corruption and bribery of HPD officials in connection with the award of HPD developments.

27.     Local Law 44 requires developers on any housing development project to report certain information regarding any project receiving city financial assistance.  City financial assistance is defined as any loans, grants, tax credits, tax exemptions, tax abatements, subsidies,

mortgages, debt forgiveness, land conveyances for less than appraised value, land value or other thing of value allocated, conveyed or expended by the City.

28.    In accordance with §26-904 of Local Law 44, the information that must be reported by developers includes, for any employee engaged to perform work on such project either by the developer or any covered contractor:

> the name of the employer; the address and phone number of the employer; the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise; gross wages; deductions; allowance, if any, claimed as part of the minimum wage and net wages.

The information that must be reported also includes the individual employee's "job title, position, or a description of the type of work performed by such person."

29.    A covered contractor is defined as any contractor or subcontractor on any project receiving city financial assistance whose gross annual revenue for the preceding tax year is not less than $2.5 million.

30.    Local Law 44 also assumes that certain lists are kept by HPD.  First, it assumes that there are one or more "prequalified" lists that will identify entities that are prequalified by HPD to be selected as developers, including a list of entities that HPD compiles and makes available to developers to assist in selecting contractors and subcontractors.  One need not be a "covered contractor" to be on a prequalified list.  Upon information and belief, HPD keeps no "pre-qualified lists," nor is it required or authorized to do so.

31.    Second, the new law assumes that there will  be one or more "disqualified" lists that will identify entities that are precluded by HPD from being selected as developers of a project.  "Disqualified" is said to mean "debarred, suspended or otherwise prohibited for any length of time."   The "disqualified list" is also defined to include "entities that are ineligible to

be included on a list of prequalified contractors or subcontractors. One need not be a "covered contractor" to be on a disqualified list. Upon information and belief, HPD keeps no "disqualified lists" nor is it authorized or required to do so.

32.     Section 26-902 of Local Law 44 requires that HPD publish the disqualified list(s) on its website, but requires only the list identifier and qualification criteria be posted for prequalified lists, rather than requiring posting at the actual list(s).

33.     Section 26-905 of the new law provides that any contractor or subcontractor that fails to provide the wage reporting information required by §26-904 "shall be ineligible to be included on a prequalified list."

34.     Section 26-905 of Local Law 44 also contains a provision making any contractor or subcontractor with a history of "construction conditions" ineligible to be included on a prequalified list. Construction conditions are defined as (1) a violation of City construction codes issued to a project, a developer, or a contractor of such project; (2) a complaint made to HPD relating to the construction quality of a project, or (3) a determination by HPD that the construction quality of a project does not comply with applicable law or does not "conform to customary standards for construction" in the City. One need not be a covered contractor to be the subject of a construction condition or to be found ineligible to be included on a prequalified list.

## CONFLICTS WITH STATE LAWS

### New York State's Minimum Wage Act

35.     Local Law 44 is inconsistent with, and preempted by, New York State's minimum wage law, codified as Labor Law Art. 19 §§ 650 et seq., which preempts all local wage regulation, with certain exceptions for work directly contracted for by the City. It is also in

11

violation of Section 11(1)(f) of New York's Municipal Home Rule law, which prohibits localities from adopting any local law that supersedes a State statute if that law "applies to or affects any provision of . . . the labor law." Rather than promoting well-constructed homes and combating corruption and bribery of HPD officials, the plain effect of imposing burdensome and punitive wage reporting mandates is to pressure developers and contractors to forego hiring community based subcontractors and women/minority owned businesses, and instead hire trade union labor. There is nothing to be gleaned about the quality of construction, or the honesty of HPD officials, from the wage reporting requirements of Local Law 44.

36.     Labor Law Article 19's statement of public policy states:

> There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families. Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy. Accordingly, it is the declared policy of the state of New York that such conditions be eliminated as rapidly as practicable without substantially curtailing opportunities for employment or earning power. To this end minimum wage standards shall be established and maintained.

37.     Article 19 § 652 defines what the minimum wage shall be.

38.     Article 19 § 655 creates a wage board to conduct the research necessary to recommend minimum wages and to recommend regulations appropriate to carry out the purposes of the law and to safeguard minimum wages.

HF 8302717v.3

39.    Article 19 § 656 gives the Commissioner of Labor authority to accept or reject the recommendation of the wage board.  Section 657 goes on to detail the procedure for appealing minimum wage orders and regulations.

40.    Article 19 § 660 also gives to the Commissioner of Labor the power to investigate the wages of employees in the state and

> to enter the place of business or employment of any employer for the purpose of (1) examining and inspecting any and all books, registers, payrolls and other records that in any way relate to or have a bearing upon the wages paid to, or the hours worked by any employees, (2) ascertaining whether the provisions of this article and the orders and regulations promulgated hereunder are being complied with; and (c) to require from any employer full and correct statements and reports in writing, at such times as the commissioner may deem necessary, of the wages paid to and the hours worked by his employees.

41.    Article 19 § 660 requires employers to keep records of hours worked by each employee, along with wages paid and such other information as the Commissioner deems necessary, and requires that such information be provided to the commissioner upon demand. This provision specifically provides that:

> every employer shall establish, maintain, and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked, the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other basis; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages for each employee, plus such other information as the commissioner deems material and necessary.

42.    Section 661 of Article 19 sets forth exactly what wage information employers are required to keep, requires that employers keep those records open to inspection by the commissioner, and provides the commissioner with authority to question employees with respect to wage rates and hours worked:

HF 8302717v.3

> For all employees covered by this article, every employer shall establish, maintain, and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked, the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other basis; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages for each employee, plus such other information as the commissioner deems material and necessary. . . . Every employer shall keep such records open to inspection by the commissioner or his duly authorized representative at any reasonable time. . . . Employers shall permit the commissioner or his duly authorized representative to question without interference any employee of such employer in a private location at the place of employment and during working hours in respect to the wages paid to and the hours worked by such employee or other employees.

43.    Section 662 of Article 19 then sets forth the penalties for penalizing an employer for failure to pay minimum wage, for failure to keep records, and for recidivism.  Section 663 also provides for a private civil action by employees or by the Commissioner on behalf of any employee to recovers wages and penalties for violations of the minimum wage law.

44.    Upon information and belief, the information that must be made available pursuant to Article 19 is information that is kept confidential and not made available to the public because of its personal and competitive nature.  Local Law 44 would make this information publicly available through the Freedom of Information Law, contrary to the intent of the state legislation.

45.    In Article 19, the New York State Legislature has set forth a comprehensive scheme for determining proper wages, investigating wages paid by employers, enforcing wage laws, and penalizing non-compliance.  The State has delegated the wage board and commissioner of labor with the authority to carry out these tasks. The City Council has no authority to carry out any of these functions, to alter them in any way, or to delegate such

functions to HPD or elsewhere. Article 19 completely occupies the field of minimum wage reporting in New York, and Local Law 44, which attempts to mandate additional wage reporting, additional method of wage monitoring, and additional penalties for non-compliance is, therefore, wholly preempted.

**New York State's Private Housing Finance Law**

46. Local Law 44 is inconsistent with, and preempted by, the statutory scheme set for by New York State in Articles 15 and 16 of the New York General Municipal Law and Articles 8, 8-A, 8-B, 11, 15, and 22 of the New York Private Housing Finance Law, which together authorize the City to provide financial assistance to private developers and others for the construction and rehabilitation of affordable housing.

47. Each of these statutes empowers HPD to administer the financial assistance programs, and strictly limits, or otherwise altogether precludes, involvement by the City Council. Moreover, the statutes make clear the conditions upon which financial assistance may be provided or obtained.

48. In creating the statutory schemes for the administration of affordable housing development financial assistance, the State legislature assigned particular roles to the Mayor, HPD, and the City Council. Where the City Council is given a role, the applicable statutes strictly define that role. None of the roles delegated to the City Council under the Private Housing Finance Law relate to any of the provisions of Local Law 44. Where the City Council is given no role in the comprehensive statutory scheme created by the State legislature, it may not interfere with the administration of these State-authorized programs.

49. By imposing additional regulations and limitations upon who may work on projects receiving financial assistance, the City Council is dictating who may receive financial

15

assistance and who those people may choose to do business with, neither of which it is empowered to do. This intrusion by the Council is inconsistent with the administrative frameworks set forth in the above listed Articles of the General Municipal Law and Private Housing Finance Law, which expressly gives the Mayor and HPD, rather than the City Council, authority to implement these programs, and in particular, to set the business terms for the developments.

50.    The purpose of Articles 15 and 16 of the New York General Municipal Law and Articles 8, 8-A, 8-B, 11, 15, and 22 of the New York Private Housing Finance Law is to create financial incentives for private investment in the construction, rehabilitation and preservation of deteriorated buildings. The additional restrictions placed upon HPD by the City Council impede the operations of the State laws by impermissibly dictating who is eligible to obtain financial assistance under these programs and who may participate in housing development projects, as well as adversely affecting the costs of these projects. In this way, Local Law 44 not only attempts to legislate in a field that is wholly occupied by State law, but actively frustrates the purpose of the State law.

### LOCAL LAW 44 VIOLATES PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS AS NO REASONABLE PERSON CAN UNDERSTAND IT, AND IT WILL FAIL TO ACHIEVE ITS OBJECTIVES

51.    Local Law 44 is hopelessly vague for a variety of reasons. While it purports to make transparent information relating to certain employers who receive New York City financial assistance in the course of their business, it only raises more questions than it answers.

52.    The problems with Local Law 44 start with its first substantive words. The "Definitions" section of the new law says that "City financial assistance" includes certain enumerated item such as loans and grants, and a catch all "other thing of value allocated,

16

conveyed or expended by the city." It is unclear what is meant by "other thing of value allocated, conveyed or expended by the city." HPD is administratively involved with the allocation of certain state and federal funds that are not the funds of the City, and that developers are entitled to. For example, certain tax credits are available to low income housing projects as of right. HPD is merely the entity in the City that allocates those credits. Yet it appears that Local Law 44 declares these to be City financial assistance, when they are State and/or Federal assistance, and when HPD has no discretion to refuse to provide those credits. Moreover, some development projects are eligible for certain inclusionary zoning bonuses under the Zoning Resolution of the City of New York, and it is unclear whether such bonuses would be considered something that is "allocated, conveyed or expended."

53.    Local Law 44 defines a "housing development project" as any construction, rehabilitation or alteration of any residential structure that creates or preserves at least one dwelling unit and receives city financial assistance, with the exception of "non-discretionary tax abatements or benefits approved or administered in accordance with sections 421-a or 489 of the New York state real property tax law or other similar programs." Certain work relating to, among other things, emergencies or hazardous conditions, are also excepted. Because the definition of a "housing development project" relies upon the definition of "city financial assistance," it too is vague and ambiguous. Furthermore, it is unclear what non-discretionary programs are meant to be excluded as "other similar programs."

54.    The definition of "construction condition" in Local Law 44 includes "a complaint relating to the construction quality" of a project. The definition does not say whether the complaint must be reasonable, material, meritorious or even made in good faith. A construction condition also includes a determination by HPD that a project "does not conform to customary

17

standards for construction in the city of New York." What these customary standards are or how HPD will determine them is not stated.

55.     Local Law 44's definition of a "covered contactor" is also vague and ambiguous. Whether a contractor is covered is determined by its annual gross revenue "for the immediately preceding tax year." But all years are "tax years." It is unclear whether this means the calendar year, the year-end chosen by any particular contractor in question, the immediately preceding year, or something else.

56.     Local Law 44 next defines a "disqualified list" of entities that are precluded from being selected as developers, contractors or subcontractors, and includes any entities that are ineligible to be included on a list of prequalified contractors or subcontractors. Nowhere in the law, however, does it say whose responsibility it is to create the list. The law only says who will be on the list, and that HPD must make certain information from the list available on its website. Case law expressly prohibits an agency, such as HPD, from debarring bidders, without express legislation conferring such a power. Creating a list of debarred or unacceptable developers, contractors or subcontractors would run afoul of that prohibition.

57.     Moreover, Local Law 44 provides absolutely no procedural due process to developers, contractors and subcontractors placed on the disqualified list. There is no means to challenge any complaint, and no means to challenge being put on the list, yet being put on the disqualified is a very harsh penalty because it is then impossible to be chosen to do work on a development project that receives City financial assistance. There is no indication of how or when a name should be removed from a disqualified list.

58.     Local Law 44 §26-903 requires that HPD put certain enumerated information about each housing development project on its website, including information about the

18

developer, contractors and subcontractors. Subsection (c)(i) of that section purports to set forth a limitation regarding which contractors a developer must provide information about. Thus, the reporting requirement is "limited to those subcontractors that entered into a contract or other agreement or were otherwise engaged by a contractor or the department." This limitation, however, appears to have no purpose, because under any circumstances, a developer would only be reporting on a subcontractor that it had engaged. Thus, §26-903(c)(i) is hopelessly vague in its meaning or purpose.

59.   At the heart of Local Law 44 is §26-904, which requires that developers provide certain wage information to HPD, including information for contractors and subcontractors. Despite the requirement that developers must provide this information to HPD, the new law punishes contractors and subcontractors who fail to provide wage reporting information in accordance with §26-904. Yet, nowhere are contractors and subcontractors required, authorized, or even permitted by Local Law 44 to provide any such wage information to HPD. These provisions are wholly inconsistent, and render the provisions of Local Law 44 nonsensical. Under the plain language of the law, a developer that does not provide the required information to HPD is not placed on the disqualified list, but a contractor or subcontractor, neither of which is required to provide information to HPD, is put on the disqualified list if their developer fails or refuses to provide the information to HPD, even if the contractor or subcontractor provided the required information to the developer. Again, there is no mechanism to challenge placement on a disqualified list.

60.   Section 26-905(b) also states that a contractor or subcontractor with a "history of construction conditions, as determined by the department," shall be ineligible to be on the list of prequalified contractors and subcontractors. Yet nowhere does Local Law 44 say what a history

19

of construction conditions means.  Nor does the law indicate what HPD is to determine.  As written, it seems that HPD is only to determine whether there is a history of construction conditions, which requires no discretion be exercised. It could also mean a history of construction conditions for which HPD has rendered an actual determination, but there is no mechanism for HPD to make any such determination, or to give developers, contractors and subcontractors the right to challenge such a determination.

61.     In addition to being hopelessly vague, Local Law 44 is also unworkable for a variety of reasons.  As described above, the entire heart of the new law makes no sense because it is developers who are required to report to HPD, but the reported information must come from contractors and subcontractors who are not required to report to HPD.  Developers are not punished for failing to report, but contractors and subcontractors are punished if the developer fails to report, even if the contractor or subcontractor provided the information to its developer.

62.     Section 26-901(g) of the new law requires that any entities that are not selected to be put on an HPD prequalified list must be included on the disqualified list.  So, for the simple reason of not being right for a particular job, and therefore not being eligible for a prequalified list, an entity can find itself on the disqualified list.  Local Law 44 does not give any guidance as to when a developer, contractor, or subcontractor on a disqualified list can be removed from that list, or whether it can then be put on a prequalified list.  Indeed, it seems that an entity could wind up on both the disqualified list and the prequalified list for the simple reason that for one project it was considered to be qualified to do the work and for another project it was not found qualified.  There is no mechanism set up to challenge placement on a disqualified list.

63.     The new law's definition of "covered contractor" requires that to determine whether a contractor meets the minimum dollar threshold for inclusion under the law, the annual

gross revenues of separate contractors or subcontractors must be aggregated where "an entity is a principal owner of, serves as the principal officer of, conducts or participates directly or indirectly in the conduct of the affairs of such contractor or subcontractor and any other contractor or subcontractor."

64.     While it seems that the intent of the law was to aggregate related entities, the law only aggregates those entities that are related through another entity.  Thus, if an individual, rather than an entity, is the common link between two subcontractors, those subcontractors will not be aggregated.     Contractors and subcontractors can simply circumvent this definition by making sure that companies are related only by individuals, and not by entities.  Indeed, an individual could form a separate company for every project he works on, and could in that way be kept from ever reaching the $2.5 million threshold for inclusion under this law.

65.     Section 26-904 of the new law requires that developers provide specific information about wages being paid to contractors and subcontractors, but that is not part of the information that HPD is required to put on its website.  All that is required for publication on the website is whether such information was provided to HPD.

66.     In addition, many contractors and subcontractors on housing development projects also work on market rate projects as well.  Their employees, therefore, work on both affordable housing and market rate jobs.  Section 26-904 requires contractors and subcontractors to divulge employee wage information, even though that information would relate to jobs that do not fall under the definition of "housing development project."

67.     A particularly disturbing part of Local Law 44 is that it defines "construction conditions" as any complaint made about the construction quality of a project, whether or not that complaint is made in good faith or has any basis in fact.  HPD is then required to publish on

21

its website the number of construction conditions for each project, again without any vetting or determination as to the bona fides of any complaint. A completely false complaint could be made, but HPD will be required to put it on its website as a "construction condition." There is absolutely no mechanism set up to contest or examine the validity of any purported "construction conditions." There is no penalty for false reporting.

68.      And, for all its good intentions, Local Law 44 will not accomplish its objective of increasing transparency of HPD projects. As Mayor Michael R. Bloomberg stated in his August 24, 2012 veto message:

> While Introductory Number 730-A purports to increase the transparency of affordable housing development in New York City, it imposes onerous and costly reporting requirements without any significant improvement in government transparency. For example, it requires HPD to collect wage data for every employee of each developer, contractor and subcontractor associated with each housing development project on a quarterly basis. But, other than for projects subject to the prevailing wage laws, HPD plays no role in reviewing wages and has no legal authority to remedy wage violations. However, by forcing HPD to warehouse these documents, the bill will lead to the generation of numerous Freedom of Information Law requests seeking production of this data, which will result in the need to hire more staff to attend to these requests. Again, HPD costs will be incurred with no benefit to the public or to the City's housing stock.

69.      Because Local Law is hopelessly vague, unworkable, and will fail to achieve its objectives, it is inconsistent with and violates the Due Process Clause contained in the United States and New York State Constitutions.

## INJURIES FROM LOCAL LAW 44

70.      Many of NYSAFAH's members are developers, contractors, and subcontractors who regularly work on housing development projects in the City as that term is defined by Local Law 44.

22

71.     In the past year, each of Sterling, BWS, Smedco, Deutscher, LIS, PPEE. ANR, and Mastercraft worked on, or is currently working on, one or more housing development projects as that term is defined by Local Law 44.  These plaintiffs must now provide the information set forth in Local Law 44 to their contractors or developers.  While some of these plaintiffs did not gross over $2.5 million in 2012, they could exceed that amount in 2013. Because it is unclear as of what date the plaintiffs must calculate their gross revenue under Local Law 44, and because they do not want to be prohibited from working on housing development projects in the following year, they are compelled to comply with Local Law 44.

72.     Sterling, BWS, Smedco, Deutscher, LIS, PPEE, ANR, and Mastercraft do not work exclusively on housing development projects; they have employees who work on both housing development projects and on market rate projects.  Local Law 44 will require the plaintiffs to report wage information for work done on market rate jobs.

73.     Sterling, BWS, Smedco, Deutscher, LIS, PPEE, ANR, and Mastercraft estimate that it will cost them, as subcontractors, approximately $5,000 annually to comply with Local Law 44.

74.     If they do not comply, these plaintiffs will lose their ability to work on projects that receive any City financial assistance.

75.     NYSAFAH estimates that it will cost its developer and general contractor members between $50,000 and $100,000 annually to comply with Local Law 44.

76.     Developers and general contractors that do not comply will lose their ability to work on projects that receive any City financial assistance.

77.     NYSAFAH's members and each of Sterling, BWS, Smedco, and Deutscher will now be subject to complaints lodged against them being published on the internet on HPD's

23

website, even if those complaints are completely unfounded. Moreover, there is no path for developers, contractors and subcontractors to challenge any construction complaints or placement on a disqualified list, to be removed from any disqualified list, or to be compensated for unfairly being placed on a disqualified list.

78.     Additionally, plaintiffs LIS, PPEE, ANR, and Multicolor, who do not meet the definition of a "covered contractor" under Local Law 44 for purposes of wage reporting, will nevertheless be subject to complaints lodged against them being published on the internet on HPD's website, even if those complaints are completely unfounded. There is no path for them to challenge any construction complaints or placement on a disqualified list, to be removed from any disqualified list, or to be compensated for unfairly being placed on a disqualified list either.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Preemption by New York's Labor Law)

79.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.     New York Labor Law Article 19, §§ 650-665 occupies the field of wage regulation in the State of New York for the employers and employees covered by Local Law 44. Local Law 44's purpose, means and effect all infringe upon the subject matter and substance of Article 19 of the State Labor Law.

81.     Article 19 plainly sets forth the complete mechanism, not only for determining the minimum wage that workers must be paid in the City and State of New York, but also the complete mechanism for employer record keeping, monitoring employers to assure that they are complying with these laws, and penalizing employers who do not comply with the law. Local Law 44 attempts to legislate in the exact same area and is therefore wholly preempted.

HF 8302717v.3

82.    Moreover, Local Law 44 purports to require wage reporting, wage monitoring, and penalties for failing to provide wage information to HPD that are different from and in addition to the penalties prescribed by the State law.

83.    The City Council's passage of legislation that is inconsistent with and preempted by Article 19 of the State Labor Law is illegal and constitutes a violation of the New York State Constitution.  As such, Local Law 44 should be declared illegal and unconstitutional, and defendants should be permanently enjoined from enforcing it.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Preemption by New York's Municipal Home Rule Law)

84.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.    Municipal Home Rule Law §11 provides, in relevant part:

> 1. Notwithstanding any provision of this chapter, the legislative body shall not be deemed authorized by this chapter to adopt a local law which supersedes a state statute, if such local law:

> \* \* \* \*

> f. Applies or affects any provision of . . . the labor law.

86.    Because Local Law 44 applies to or affects Article 19 of the State Labor Law, it is unauthorized and invalid.

87.    Municipal Home Rule Law §22(2) provides that, "No local law shall supersede any provision of a state statute except as authorized by the constitution, that chapter or any other state statute."

88.    Because Local Law 44 is not authorized to supersede Article 19 of the State Labor Law, it is unauthorized and invalid.

HF 8302717v.3

89.     The City Council's passage of legislation that is inconsistent with and preempted by Municipal Home Rule Law §§ 11 and 22(2) is illegal and constitutes a violation of the New York State Constitution. As such, Local Law 44 should be declared illegal and unconstitutional, and defendants should be permanently enjoined from enforcing it.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Preemption by New York State Affordable Housing Statutes)**

90.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     Articles 15 and 16 of the New York General Municipal Law and Articles 8, 8-A, 8-B, 11, 15, and 22 of the New York Private Housing Finance Law occupy the field for the administration of financial assistance provided for in these statutes to private developers and others for the construction and rehabilitation of affordable housing in New York City. Local Law 44's purpose, means and effect all infringe upon the subject matter and substance of these provisions of State law.

92.     State law sets forth the complete mechanism for the administration of these financial assistance provisions. Moreover, the statutes make clear the conditions upon which financial assistance may be provided or obtained. Local Law 44 attempts to legislate in the exact same area and is therefore wholly preempted.

93.     Local Law 44 purports to require conditions for receiving financial assistance, as well as penalties for refusing to comply with those conditions, that are different from and in addition to the conditions prescribed by the State law.

94.     The City Council's intrusion into the administration of financial assistance for affordable housing projects will have a deleterious effect on the ability of these projects to meet

the State's goal of incentivizing private investment in the construction, rehabilitation and preservation of deteriorated buildings. Thus, Local Law 44 not only attempts to legislate in a field that is wholly occupied by State law, but actively frustrates the purpose of the State law.

95.     The City Council's passage of legislation that is inconsistent with and preempted by Articles 15 and 16 of the New York General Municipal Law and Articles 8, 8-A, 8-B, 11, 15, and 22 of the New York Private Housing Finance Law is illegal and constitutes a violation of the New York State Constitution.  As such, Local Law 44 should be declared illegal and unconstitutional, and defendants should be permanently enjoined from enforcing it.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Unlawful Deprivation of Due Process)**

96.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.     Under the United States and New York State Constitutions, no person shall be deprived of life, liberty or property without due process of law.

98.     By allowing any and all construction complaints to act as a construction condition, without any investigation or opportunity for those accused to be heard, Local Law 44 deprives developers, contractors and subcontractors of liberty and property without due process of law.  By requiring HPD to debar developers, contractors and subcontractors from working on development projects, without any investigation or opportunity for those debarred to be heard, Local Law 44 deprives developers, contractors and subcontractors of liberty and property without due process of law.

99.     Due process of law also requires that laws be crafted to sufficient clarity to give a person of ordinary intelligence a reasonable opportunity to know what is required of him or her.

27

Local Law 44 does not satisfy this standard because it is replete with terms that are hopelessly vague and/or simply make no sense. Thus Local Law 44 is void for vagueness.

100.   The constitutional requirements of due process further require that the means selected by a legislature be reasonably calculated to achieve the stated objective. Local Law 44 fails this test too as it is unworkable and unrelated to achieving the stated objectives of assuring quality construction of affordable housing projects, assuring that workers on affordable housing projects are being paid in accordance with applicable laws; and preventing corruption and bribery of HPD officials in connection with the award of developments.

101.   Accordingly, Local Law 44 should be declared illegal and unconstitutional, and defendants should be permanently enjoined from enforcing it.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Unlawful Deprivation of Equal Protection)

102.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.   The Fourteenth Amendment of the United States Constitution provides that no State shall "deny persons within its jurisdiction the equal protection of the laws." Under the "Equal Protection Clause," a State may only discriminate between persons similarly situated where there is a rational basis for doing so.

104.   By requiring that HPD aggregate the annual gross revenues of separate contractors or subcontractors where "an entity is a principal owner of, serves as the principal officer of, conducts or participates directly or indirectly in the conduct of the affairs of such contractor or subcontractor and any other contractor or subcontractor," but not where an individual is a principal owner of, serves as the principal officer of, conducts or participates

HF 8302717v.3

directly or indirectly in the conduct of the affairs of such contractor or subcontractor and any other contractor or subcontractor, Local Law 44 unlawfully discriminates between contractors and subcontractors with corporate structures and those that are sole proprietors or are only related through an individual.

105.   By discriminating between different classes of contractors and subcontractors based on ownership structure, without any rational basis for doing so, the City Council has denied those operating through a corporate structure with equal protection of the laws.

106.   Accordingly, Local Law 44 is illegal and unconstitutional, and defendants should be permanently enjoined from enforcing it.

**WHEREFORE,** plaintiffs respectfully request that the Court grant the following relief:

A.   Declaring that Local Law 44 is unconstitutional, illegal, invalid, null and void because (i) it is inconsistent with and preempted by New York Labor Law Article 19, §§ 650-665, (ii) it is inconsistent with and preempted by Municipal Home Rule Law §§ 11 and 22(2), (iii) it is inconsistent with and preempted by New York State's Affordable Housing Statutes, (iv) it violates the Due Process Clause of the United States and New York State Constitutions, and (v) it violates the Equal Protection Clause of the United States Constitution;

B.   Preliminarily and permanently enjoining defendants and their agents from enforcing Local Law 44;

C.   Awarding plaintiffs their attorneys' fees, costs and disbursements in connection with prosecuting this action; and

HF 8302717v.3

       D.    Granting plaintiffs such other and further relief as the Court deems just and proper.

Dated:   New York, New York
          July 24, 2013

                    HERRICK, FEINSTEIN LLP

                    By: _____
                        Scott E. Mollen
                        Darlene Fairman
                  2 Park Avenue
                  New York, NY 10016-9301
                  (212) 592-1400

                  Attorneys for Plaintiffs

30